UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCHELLE DANIEL,

       Plaintiff,

                                                 CASE NO. 2:11-CV-13141
v.                                     JUDGE VICTORIA A. ROBERTS
                                                 MAGISTRATE JUDGE PAUL KOMIVES

DTE ENERGY,

       Defendant.
                                       /

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket #49)**

I.       RECOMMENDATION: The Court should grant defendant's motion for summary judgment.

II.     REPORT:

A.     *Background*

This is the third case brought by plaintiff Rochelle Daniel against defendant DTE Energy, all arising from a $40.67 debt claimed to be owed by DTE but denied by plaintiff. On November 8, 2006, plaintiff filed a complaint in the Oakland County Circuit Court against DTE and Asset Acceptance, the debt collection agency to which DTE had sold plaintiff's alleged debt. Plaintiff's complaint in that action asserted claims under the Fair Credit Reporting Act (FCRA), as well as claims for defamation and fraud. Asset Acceptance removed the case to this Court on December 14, 2006. On October 23, 2007, the Court granted summary judgment to the defendants. *See Daniel v. Asset Acceptance, LLC*, No. 2:06-cv-15600 (E.D. Mich.). On March 20, 2008, plaintiff filed a second suit against DTE in the Wayne County Circuit Court, asserting state law claims for fraud, defamation, negligence, and intentional infliction of emotion distress. At about the same time,

1

plaintiff filed a complaint with the Michigan Public Service Commission relating to the disputed debt. On February 24, 2009, the state court dismissed plaintiff's complaint, concluding that all of her claims were barred by the statute of limitations.

Plaintiff, proceeding *pro se*, commenced the instant action on July 20, 2011. Plaintiff filed an amended complaint on August 15, 2011. Plaintiff alleges that defendant improperly obtained her credit report on July 28, 2008, and also improperly compelled her to provide six years of credit reports during discovery in the Wayne County Circuit Court litigation. Plaintiff claims that defendant used false and deceptive practices to obtain her consumer credit report, in violation of 15 U.S.C. § 1681q; requested and obtained her credit report without a permissible purpose, in violation of 15 U.S.C. § 1681b(f); and invaded her privacy. She seeks $1,000.00 in statutory damages for each FCRA violation, $100,000 in punitive damages for the FCRA violations, and $400,000 in compensatory damages for the invasion of privacy.

The matter is currently before the Court on defendant's motion for summary judgment, filed on February 28, 2013. Defendant argues that each of plaintiff's claims fails to state a claim upon which relief may be granted, and that plaintiff has failed to show a genuine issue of material fact with respect to any of her claims. Defendant also seeks a determination that plaintiff is a vexatious litigator and an order enjoining her from filing any further lawsuits against defendant without first obtaining permission from the Court. Plaintiff filed a response to the motion on April 9, 2013, and defendant filed a reply on April 23, 2013.

B.   *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.  *Analysis*

   1.  *Fair Credit Reporting Act Claims*

Plaintiff asserts two claims against defendant under the Fair Credit Reporting Act. Specifically, plaintiff claims that defendant obtained her credit report for an impermissible purpose in violation of 15 U.S.C. § 1681b(f), and related that defendant obtained her credit report through false pretenses (namely, its assertion that it had a permissible purpose) in violation of 15 U.S.C. § 1681q. The Court should conclude that defendant is entitled to summary judgment on these claims.

As relevant here, the FCRA provides that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section[.]" 15 U.S.C. § 1681b(f)(1). Two authorized uses set forth in the statute are relevant here. First, the Act provides that a person may obtain a credit report where that person "has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(I). Second, a credit report may be obtained by a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of,

4

the consumer." 15 U.S.C. § 1681b(a)(3)(A). Whether a permissible purpose under the statute exists is a question of law. *See Breese v. TRIADvantage Credit Servs., Inc.*, 393 F. Supp. 2d 819, 821 (D. Minn. 2005); *Edge v. Professional Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999). There is no genuine issue of material fact that defendant's obtaining plaintiff's credit report on July 28, 2008, satisfied both of these provisions.

It is undisputed that, at the time defendant obtained plaintiff's credit report, her state court case against defendant relating to the defendant was ongoing. Further, at that time, plaintiff was pursuing a complaint with the MPSC relating to the debt. Specifically, MPSC records indicated that on July 28, 2008, the date of defendant's inquiry, plaintiff called the MPSC wanting defendant to identify the account number to which the alleged debt related, and the MPSC forwarded the question to defendant on the same date. *See* Def.'s Br., Ex. D. Plaintiff's lawsuit alleging improper reporting of the debt provided defendant with a legitimate need for plaintiff's credit report to defend against plaintiff's claims. *See Kowall v. GMAC Mortg., LLC*, No.11-15454, 2012 WL 884851, at *3 (E.D. Mich. Mar. 15, 2012) (Cleland, J.) (discussing *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996)). Likewise, plaintiff's request that defendant provide the account number to which the alleged debt related provided a legitimate business purpose and legitimate debt collection purpose for the inquiry. In addition, defendant had a legitimate business purpose for obtaining the credit report because, at the time it requested the report, it was in the process of buying back the debt from Asset Acceptance in order to close the debt, in response to plaintiff's lawsuit and MPSC complaint. *See* Def.'s Br., Ex. E.

Plaintiff's arguments to the contrary are unavailing. For example, plaintiff argues that her "second lawsuit was <u>not</u> about Defendant reporting a past-due debt to the credit reporting agencies,"

Pl.'s Br., at 6, and thus that suit could not have provided a legitimate reason for defendant's inquiry. However, plaintiff's complaint in that suit repeatedly alleged that defendant falsely reported a debt she did not owe, and her legal claims were based on those assertions. *See* Def.'s Br., Ex. H, state court complaint, ¶¶ 6-9, 15-18, 22, 27-32. Plaintiff also asserts that, once defendant sold the debt to Asset, it gave up its right to collect on the debt and therefore it did not have a permissible purpose in obtaining her credit report. *See* Pl.'s Br., at 8. However, regardless of the sale of the debt defendant still had a legitimate purpose in obtaining the report to respond to plaintiff's lawsuit and her MPSC request. Further, none of plaintiff's arguments calls into question the validity of defendant obtaining the report to buy back the debt from Asset in order to cancel it.

The foregoing also suffices to resolve plaintiff's claim that defendant used false pretenses to obtain her credit report. In order to succeed on this claim, "plaintiff must show that credit information was obtained for an impermissible purpose–a showing of a permissible purpose is a complete defense. . . . Where a permissible purpose for obtaining the credit information is demonstrated, then, as a matter of law, the information cannot have been obtained under false pretenses." *Edge*, 64 F. Supp. 2d at 117; *see also*, *Scharpf v. AIG Marketing, Inc.*, 242 F. Supp. 2d 455, 468 (W.D. Ky. 2003) ("It is well-established that if a person obtains and uses a consumer report pursuant to a valid permissible purpose authorized by ... § 1681b, it cannot be liable under a false pretenses theory."). Accordingly, the Court should conclude that defendant is entitled to summary judgment on plaintiff's FCRA claims.

2. *Invasion of Privacy*

Plaintiff also brings a state law claim for invasion of privacy under the theory of intrusion upon seclusion. This claim is based on defendant requesting, and obtaining from her, discovery of

numerous years of credit reports in the state court litigation. The Court should conclude that defendant is entitled to summary judgment on this claim.

Under Michigan law,[1] "[t]here are three necessary elements to establish a prima facie case of intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right

---

[1] The parties agree that Michigan law governs this claim. In resolving the plaintiff's state law claim, the Court must apply the substantive law of the state. 28 U.S.C. § 1652 ("The laws of the several states . . . shall be regarded as rules of decisions in civil actions in the courts of the United States, in cases where they apply."); *see also, Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In determining the appropriate source of law, the Court applies the choice of law rules of Michigan, the state in which this Court sits. *See Klaxon v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996). Under Michigan choice of law rules, a court "will apply Michigan law unless a 'rational reason' to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997). Here, there is no question that plaintiff is a resident of Michigan. Likewise there is no question that defendant was doing business in Michigan. Thus, under Michigan's *lex fori* rule, Michigan law applies to plaintiff's claim. *See Hollister v. Dayton Hudson Corp.*, 5 F. Supp. 2d 530, 533 (E.D. Mich. 1998) (Feikens, J.), *aff'd in part, rev'd in part on other grounds*, 201 F.3d 731 (6th Cir. 2000). Additionally, choice of law issues do not involve a court's subject matter jurisdiction, and may be stipulated to by parties as a matter of contract. For these reasons, there is substantial authority for the proposition that parties may stipulate during litigation the source of law governing their dispute. *See Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 687 (7th Cir. 1985); *Doe v. Nevada Crossing, Inc.*, 920 F. Supp. 164, 167 (D. Utah 1996); *Van Deurzen v. Yamaha Motor Corp. USA*, 688 N.W.2d 777, 781-82 (Wis. Ct. App. 2004). By arguing solely in terms of Michigan law, the parties have implicitly stipulated that Michigan law is controlling. *See In re Apex Automotive Warehouse, L.P.*, No. 96 B 04594, 1999 WL 132849, at *3 (Bankr. N.D. Ill. Mar. 9, 1999); *cf. Golumbia v. Prudential Ins. Co.*, No. 96-1521, 1997 WL 345728, at *2 (6th Cir. June 20, 1997) (party waived right to challenge applicability of Michigan law, notwithstanding contractual choice-of-law provision selecting New York law, where party argued merits in district court under Michigan law and failed to raise the contractual choice-of-law provision). *See generally*, *Cates*, 780 F.2d at 687 ("[T]he parties to a lawsuit can, within broad limits, stipulate to the law governing their dispute; and an implied stipulation is good enough."). Stated another way, "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law." *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995); *see also*, *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003); *Carbonic Prods. Co. v. Welding & Cutting Supply Co.*, No. 86-1730, 1987 WL 38061, at *1 (6th Cir. July 17, 1987) (per curiam); *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001). Here, neither party argues that another state's law applies, and thus the Court should apply Michigan law.

possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Doe v. Mills*, 212 Mich. App. 73, 88, 536 N.W.2d 824, 832 (1995) (citing *Tobin v. Civil Serv. Comm'n*, 416 Mich. 661, 672, 331 N.W.2d 184, (1982). Importantly, with respect to the third element, a claim of intrusion upon seclusion must fail when the plaintiff establishes "nothing objectionable about the method by which the information was obtained or is proposed to be released." *Tobin*, 416 Mich. at 673, 331 N.W.2d at . Here, plaintiff cannot establish the third element of an intrusion on seclusion claim. Defendant requested the information from plaintiff during the course of ongoing litigation pursuant to a valid discovery request under the Michigan Court Rules. The use of an authorized, legal means for obtaining information is not "objectionable" for purposes of the intrusion upon seclusion tort. *See, e.g.*, *Lansing Ass'n of School Adm'rs v. Lansing School Dist. Bd. of Educ.*, 216 Mich. App. 79, 87-88, 549 N.W.2d 15, 21-22 (1996) (request for personnel files under Freedom of Information Act not objectionable). Because plaintiff cannot show that defendant used objectionable means for obtaining the information, defendant is entitled to summary judgment on this claim.

D.   *Vexatious Filing Injunction*

In addition to summary judgment, defendant seeks an order from the Court finding that plaintiff is a vexatious filer and enjoining plaintiff from initiating further lawsuits against defendant without first obtaining leave of court. The Court should grant this request.

> Frivolous, vexatious, and repeated filings by pro se litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit. . . ." *United States v. Circuit Court for Taylor County*, 73 F.3d 669, 671 (7th Cir. 1995). Therefore, "[t]here is nothing unusual about imposing pre-filing restrictions in matters with a history of repetitive or vexatious litigation." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). "[I]t is permissible to require one who has abused the legal process to make a showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed." *Ortman v.*

>    *Thomas*, 99 F.3d 807, 811 (6th Cir. 1996). Courts consider five factors to determine whether to enjoin an individual's access to the courts:
>    > (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expenses to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.
>    *Kersh v. Borden Chemical*, 689 F. Supp. 1442, 1450 (E.D. Mich. 1988) (quoted with approval in *Soulliere v. Maxwell*, No. 07-10694, 2007 WL 1018220, at *1 (E.D. Mich. Apr. 2, 2007) (enjoining plaintiff from filing any suit arising out of his arrest on specific date where he had filed two previous lawsuits).

*Kuehnemund v. Crop Production Services, Inc.*, No. 08–14647–BC, 2009 WL 1789073, at * (E.D. Mich. June 23, 2009) (Ludington, J., adopting Report of Binder, M.J.). These factors support defendant's request for relief. This is plaintiff's third action against defendant arising from a debt of $40.00, involving the same or similar claims challenging the validity of the debt and defendant's accessing of her credit report. Defendant has had to repeatedly defend these same claims, and plaintiff can no longer harbor any objectively good faith expectation of succeeding on her claims. In these circumstances, "the preferred approach is to require an abusive litigant to obtain leave of the court before filing suit regarding the operative facts that have been the basis for his or her litigiousness." *Hyland v. Stevens*, 37 Fed. Appx. 770, 771 (6th Cir. 2002). Accordingly, the Court should enter an order enjoining plaintiff from filing any suit against DTE raising claims relating to the debt at issue here or defendant's obtaining of her credit reports without first obtaining leave of this Court to do so. Such a narrowly drawn pre-filing restriction preservers plaintiff's right of "access to the courts with respect to any other issues and parties." *Kuehnemund*, 2009 WL 1789073, at *7

E.      *Conclusion*

In view of the foregoing, the Court should grant defendant's motion for summary judgment. The Court should also enter an order prohibiting plaintiff from filing any further lawsuit against defendant raising claims related to the debt involved in this action or defendant's obtaining her credit reports without first obtaining leave of this Court to do so.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: June 26, 2013

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Rochelle Daniel and Counsel of Record on this date.


Dated: June 26, 2013                        s/ Lisa C. Bartlett
                                                 Case Manager